IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TYLER SWAIN,                                          Case No. 6:25-cv-02142-AP

               Plaintiff,              **OPINION AND ORDER**

      v.

AMERICAN HONDA MOTOR CO.,

               Defendants.

_____

POTTER, United States Magistrate Judge:

    Before the Court is Defendant American Honda Motor's (AHM) motion for sanctions against Plaintiff Tyler Swain. ECF No. 39. Alternatively, AHM moves for Plaintiff to reimburse attorneys' fees incurred in addressing ongoing violation of this Court's orders.

    Also before the Court is non-party Lithia Motors' (Lithia) motion for attorneys' fees and costs associated with defending against Plaintiff's subpoenas and discovery requests. ECF Nos. 29 and 37.

    This Court held oral argument on the motions on February 2, 2026, and on June 8, 2026. ECF Nos. 34 and 53. For the following reasons, Defendant's motion for sanctions is granted in part and denied in part. Non-party Lithia Motors' motion for attorneys' fees is also granted in part and denied in part.

PAGE 1 – OPINION AND ORDER

**BACKGROUND**

Pro se Plaintiff, Tyler Swain, filed his Complaint alleging that he purchased a Honda Ridgeline that was defective.[1] Notice of Removal, Ex. 1 (Compl.) ¶ 7, ECF No. 1. Plaintiff alleges that his vehicle began experiencing "recuring electrical [] issues," including "repeated check engine light activations, diagnostic trouble codes," and "related drivability problems and safety concerns." Compl. ¶ 9. Plaintiff brings claims against Defendant AHM based on Oregon Lemon Law, UTPA, and Magnusson-Moss Warranty Act. Compl. ¶ 3.

Plaintiff originally filed his lawsuit in Marion County Court. Compl. ¶¶ 5-6. Defendant was served with the Complaint on October 23, 2025. *See* Notice of Removal, Ex. 2 (Certificate of Service). Defendant timely removed the case to federal court on November 18, 2025. *See generally* Notice of Removal.

Prior to the case's removal to federal court, Plaintiff filed a series of arguably aggressive and untimely motions and notices against AHM. By way of example, Defendant was served with the Complaint on October 23, 2025. *See* Certificate of Service. On November 7, Plaintiff served Defendant and non-party dealerships with Notice deposition requests.[2] Then on November 12, Plaintiff served Defendant with the following: voluminous documents labeled as Plaintiff's own

---

[1] Plaintiff's Complaint states the purchase date as "on or about October 6, 2025." Compl. ¶ 7. The Court presumes this is a scrivener's error as Plaintiff's Complaint was filed in October 2025, and that the actual purchase date is on or about October 6, 2024.

[2] November 7, 2025 – Notice of Intent to Depose – Preservation of Testimony: Plaintiff sought to depose service managers from two independent dealerships, and a master technician "as soon as their individual work schedules allow." ECF No. 1, Ex. 3.

PAGE 2 – OPINION AND ORDER

discovery production,[3] a motion for sanctions,[4] a notice of intent to seek enhanced prevailing

party fees,[5] a motion for early settlement conference,[6] a motion for partial summary judgment on

liability,[7] and a notice of intent to seek default judgment.[8] At the time, Plaintiff was aware that

no response to his Complaint was even required from Defendant until November 24, 2025. *See*

Notice of Removal, Ex. 11.

On November 13, 2025, Plaintiff emailed Defendant's counsel stating that "in the interest

of efficiency, please note that if we do not have an executed settlement by Thursday, November

---

[3] November 12, 2025 – Notice of Discovery Availability: Plaintiff submitted notice of "complete discovery disclosures, including supporting documentation, exhibits, correspondence, photographs, expert statements, and video transcripts." ECF No. 1, Ex. 7.

[4] November 12, 2025 – Motion for Sanctions Under ORCP 46 and ORS § 20.105 – Plaintiff moved to impose sanctions for bad faith conduct during pre-litigation and discovery proceedings. Part of this request was based on Defendant's failure to timely respond. Under ORCP 7(C)(2), a responsive pleading is not due until 30 days from the date of service. ECF No. 1, Ex. 6.

[5] November 12, 2025 - Notice of Intent to Seek Enhanced Prevailing Party Fees – Plaintiff filed this notice based on "Defendant's repeated pattern of delay, concealment of material service documentation, and refusal to engage in good-faith settlement efforts" alleging Defendant's behavior had "unnecessarily increased the time and expense required for Plaintiff to pursue relief." ECF No. 1, Ex. 8.

[6] November 12, 2025 – Motion for Early Settlement Conference – Plaintiff filed this motion stating that Defendant failed to meaningfully engage in settlement efforts despite "multiple opportunities to engage in good-faith resolution prior to litigation." ECF No. 1, Ex. 9.

[7] November 12, 2025 – Motion for Partial Summary Judgment on Liability – arguing no genuine issue of material facts existed regarding Defendant's liability. ECF No. 1, Ex. 10.

[8] November 13, 2025 – Notice of Intent to Seek Default Judgment – Plaintiff's Notice states that "as of today, [AHM] has not filed an appearance, responsive pleading, or motion within the time permitted under Oregon Rules of Civil Procedure. …the deadline to appear or otherwise respond … is November 24, 2025 at 11:59 p.m. Unless a proper appearance or responsive pleading is filed no later than the close of the extended deadline, I intend to proceed with filing the following on November 25, 2025: Motion for Order of Default under ORCP 69A; Declaration of Non-Appearance; Proposed Order of Default; and Any additional documents required by the Court to enter default and proceed to judgment." ECF No. 1, Ex. 11.

PAGE 3 – OPINION AND ORDER

13th at 11:59p.m. PT, I will proceed to file related actions against Parker Johnstone's Wilsonville Honda and Honda of Salem and continue with noticed depositions. I'm not seeking further debate on this; I'm just giving you a clear timeline." Notice of Removal, Ex. 12. Plaintiff's email to Defendant's counsel included a settlement agreement with the following provisions: (1) full vehicle buyback at the total purchase price; (2) a replacement vehicle at no cost to Plaintiff, free and clear; and (3) a $50,000 cash "bad faith and cost shifting compensation" penalty. Notice of Removal, Ex. 12 at 2-3. Alternatively, Plaintiff offered Defendant an "Optional Non-Reengagement & Confidentiality Agreement" in which Plaintiff proposed to "permanently refrain from purchasing, leasing, or otherwise obtaining any new or 'certified used' Honda or Acura vehicles" as well as an agreement to "not make or cause to be made any public or private statement, posting, or publication (including on social media) referencing this settlement, American Honda Motor Co., Inc., or its affiliates in a negative, disparaging or defamatory manner" in exchange for a one-time payment of $100,000. Notice of Removal, Ex. 12 at 4-5.

AHM did not accept Plaintiff's proposed settlement, and on November 14, 2025, Plaintiff served non-party Lithia with a Pre-Litigation Demand & Notice of Intent to file suit. Notice of Removal, Ex. 13; Declaration of Chase Petersen (Petersen Decl.) ¶ 5, Ex. 2, ECF No. 28. Plaintiff's notice to Lithia stated his claims included breach of contract, negligent misrepresentation, intentional misrepresentation, unlawful trade practices (UTPA), violation of Oregon Lemon Law interface duties, failure to document repairs accurately, failure to follow manufacturer diagnostic procedures, and failure to disclose material diagnostic information. Petersen Decl. ¶ 5, Ex. 2 at 3-4. Plaintiff's letter demanded from Lithia a payment of $50,000

PAGE 4 – OPINION AND ORDER

within 10 business days to "resolve this matter without litigation."[9] Petersen Decl. ¶ 5, Ex. 2 at 5-6.

Defendant AHM removed the case to federal court on November 18, 2025. *See* Notice of Removal. The Court held a Rule 16 conference on December 10, 2025, to resolve disputes regarding discovery timelines and explain general discovery procedural expectations to Plaintiff. ECF No. 18. On December 18, 2025, the Court was informed of ongoing discovery disputes and ordered the parties to confer to resolve the discovery disputes and reach out to the Court for a conference if resolution was not possible. ECF No. 19.

On January 14, 2026, the Court was notified that Plaintiff was posting about his case on social media, targeting AHM, Lithia, dealership employees, family members of dealership employees, and had even posted the home address of a family member of a non-party dealership employee.[10] ECF No. 21. On January 15, 2026, Defendant AHM filed a motion for a protective order which the Court granted following a hearing held on January 16, 2026. ECF Nos. 24 and 26. The protective order specifically precluded Plaintiff from: (1) engaging in any direct contact with AHM, including its employees; (2) any further online harassment and social media posting about this litigation especially "doxxing" or naming individual employees of AHM or Honda dealerships; and (3) audio or video recording AHM and dealership employees/representatives without the person's express consent. Motion for Protective Order (Protective Order) 5-6, ECF No. 24.

---

[9] To date, Plaintiff has not included Lithia as a party to any suit.

[10] The home address was subsequently removed by Plaintiff.

PAGE 5 – OPINION AND ORDER

On January 26, 2026, Lithia filed a motion[11] to recover attorney fees and costs under Rule 45(d)(1). Lithia's Mot., ECF No. 29. According to Lithia, these costs were incurred in connection with having to challenge the propriety of subpoenas issued at the early stages of the lawsuit. Lithia's Mot. 7-9. On April 10, Lithia filed an updated supplemental brief requesting additional fees in connection with Plaintiff's ongoing social media posts. Lithia's Supplemental Br., ECF No. 37.

On April 13, 2026, AHM filed a motion for terminating sanctions under Rule 41(b) and the Court's inherent power. Def.'s Mot. 7-8. According to Defendant, sanctions are warranted because of Plaintiff's continued violation of the Court's protective order and continued disruptive, unprofessional, and bizarre conduct. Def.'s Mot. 7-8, ECF No. 39.

## LEGAL STANDARD

### I.    Sanctions Under Rule 45

Rule 45(d)(1) governs sanctions on parties serving third-party subpoenas. The Rule charges that parties "responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Furthermore, the "issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id*.

The Ninth Circuit held that a court may "impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013). But a "district court need not

---

[11] Lithia filed a Motion and then filed an amended Motion on the same day. For the purposes of this order, and because both the Motion and the Amended Motion are largely the same, the Court will refer to the Amended Motion as Lithia's Motion. ECF Nos. 27, 29.

impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions." *Id.* Sanctions under Rule 45(d)(1) are discretionary. *Id.* Courts also "have discretion over the type and degree of sanction imposed. Payment of opposing counsel's attorneys' fees is one form of permissible sanction." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425 (9th Cir. 2012) (citations omitted).

## II.    Involuntary Dismissal Under Rule 41

Rule 41(b) governs involuntary dismissal of cases where "the plaintiff fails to prosecute or to comply with these rules or a court order." Fed. R. Civ. P. 41(b). Under such circumstances, "a defendant may move to dismiss the action or any claim against it." *Id*. "Unless the dismissal order states otherwise, dismissal under subdivision (b) . . . operates as an adjudication on the merits." *Id*. "Dismissal, however, is so harsh a penalty it should be imposed as a sanction only in extreme circumstances." *Thompson v. Hous. Auth. of City of Los Angeles,* 782 F.2d 829, 831 (9th Cir.) (per curiam). "Before imposing dismissal as a sanction," courts must weigh the following factors: "the public's interest in expeditious resolution of litigation; the court's need to manage its docket; the risk of prejudice to the defendants; the public policy favoring disposition of cases on their merits; and the availability of less drastic sanctions." *Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996) (citing *Thompson*, 782 F.2d at 831). Additionally, to "justify a sanction of dismissal, the court must find that the party's violations of the court's orders were due to the willfulness, bad faith, or fault of the party." *United States v. $15,333.00 in U.S. Currency*, 988 F. Supp. 2d 1229, 1233 (D. Or. 2013) (citing *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983)).

### III.    The Court's Inherent Power

A district court retains the inherent power to "sanction a party or its lawyers if it acts in 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' as well as for 'willful abuse of the judicial processes.'" *Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001) (quoting *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980)) (citation modified). The imposition of sanctions under the court's inherent power requires "a finding of bad faith, or conduct tantamount to bad faith." *Gomez*, 255 F.3d at 1134. "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.'" *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (quoting *In re Itel Sec. Litig.*, 791 F.2d 672 (9th Cir. 1986)).

## DISCUSSION

### I.    Non-party Lithia's Motion for Attorneys' Fees and Costs

In its motion for attorneys' fees and subsequent supplemental brief on attorneys' fees, Lithia cites Plaintiff's improper discovery requests, as well as his ongoing social media campaign as grounds for monetary sanctions. Lithia's Mot.; Supplemental Brief in Support of Mot. (Lithia's Supp. Br.), ECF No. 37. The Court agrees that limited monetary sanctions are appropriate as to Plaintiff's actions regarding the subpoenas.

It is generally accepted practice that party-witnesses will bear their own discovery costs. *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982). However, the "rationale for the general rule is inapplicable where the discovery demands are made on

nonparties." *Id*. "Nonparty witnesses are powerless to control the scope of litigation and discovery, and should not be forced to subsidize an unreasonable share of the costs of a litigation to which they are not a party." *Id*. Moreover, Rule 45(d)(1) charges parties to litigation with the duty to avoid imposing undue burden or expense on a person subject to a subpoena. Fed. R. Civ. P. 45(d)(1). And, a Court must enforce this duty and impose an appropriate sanction, including reasonable attorneys' fees, on any party who fails to comply. *Id*.

Here, there is ample evidence that Plaintiff's actions towards Lithia have been unreasonable and overly burdensome. Plaintiff's actions towards the non-party witnesses have been antagonistic, unreasonable, and inappropriate. While the Court is mindful that Plaintiff is pro se and may not be well-versed in the technical procedural requirements of discovery, he was put on notice of his errors by this Court, by counsel for non-party Lithia, and even by opposing counsel on multiple occasions. Despite being on notice, Plaintiff's bad behavior towards Lithia continued.

### A.  *Background on Lithia's Role as Non-Party to Plaintiff's Suit*

As discussed above, Plaintiff served Lithia with a notice of intent to depose on November 7, 2025, and a Pre-Litigation Demand and Notice of Intent to File Suit on November 14, 2025. Petersen Decl. ¶ 5, Ex. 2. On November 25, 2025, Lithia's attorney, Anthony Scisciani (Mr. Scisciani) formally requested that Plaintiff direct any future communication intended for Lithia and its employees to him. First Scisciani Decl. ¶ 4, Ex. 1. In response that same day, Plaintiff emailed Mr. Scisciani asking for a "complete copy of any additional warranty and technical materials associated with this vehicle that are in Honda of Salem/Lithia's possession, custody, or control." First Scisciani Decl. ¶ 5, Ex. 2 at 6. Mr. Scisciani promptly responded, requesting that Plaintiff provide Lithia with a "formal subpoena for documents" noting that subpoenas would

allow his clients to "set a timeline for production of any responsive documents and establish a foundation for issues (if any) that need to be presented to the Court." First Scisciani Decl. ¶ 5, Ex. 2 at 5. Mr. Scisciani noted that "[a]s a good faith gesture of cooperation, my clients have authorized my firm to accept service of your subpoena if you elect to issue one." First Scisciani Decl. ¶ 5, Ex. 2 at 6. Mr. Scisciani requested that any subpoena be sent to him via email, with his associate and assistant in copy. First Scisciani Decl. ¶ 5, Ex. 2 at 6.

Plaintiff responded to Mr. Scisciani stating "[t]hank you for the clarification regarding your clients decided non participation of ownership service record production in the standard course of business, which unaligns themselves with other dealerships who have cooperated willingly." First Scisciani Decl. ¶ 5, Ex. 2 at 5. Plaintiff stated that he would not serve the subpoenas to Mr. Scisciani by email as requested but instead intended to serve Lithia directly "in accordance with FRCP." First Scisciani Decl. ¶ 5, Ex. 2 at 5.

On December 2, 2025, Plaintiff and counsel for Defendant AHM, Stephen Yoshida (Mr. Yoshida), conducted a Rule 26(f) conference. The parties could not come to agreement on a case schedule, and Defendant emailed the Court requesting a Rule 16 conference, which was set for December 10, 2025. ECF No. 15. The next day, December 3, 2025, despite having no finalized discovery plan in place, Plaintiff emailed Defendant AHM's counsel "formal notice that I will be serving a subpoena on non-party Wilsonville Honda . . . commanding the production of documents and electronically stored information relevant to this matter as well as entry into premises for inspection purposes and evaluation." First Scisciani Decl. ¶ 10, Ex. 4 at 11.

Plaintiff sent notice of the subpoenas to Mr. Scisciani, who objected to the proposed scope and timing of the subpoenas as untimely and unreasonable. Of particular concern to Lithia was a subpoena stating that Plaintiff intended to inspect the non-party dealership's premises

PAGE 10 – OPINION AND ORDER

"from 8:00AM to 12:00PM on Saturday, December 6, 2025 – to 'inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.'" First Scisciani Decl. ¶ 10, Ex. 4 at 11.

> On December 3, 2025, Mr. Scisciani emailed Plaintiff:
>
> *First*, my client is not available this Saturday for any inspection and it is our position that less than three (3) days' notice is not reasonable. I know you said in your cover e-mail that you would be accommodating with respect to the timing of any inspection; so, my focus primarily relates to the *scope* of your request (discussed next).
>
> *Second*, we consider the scope of your requested inspection – certainly on the face of the subpoena and even in consideration of your comments below – to be unreasonably vague, overly broad and potentially disruptive to my client's ongoing operations. Therefore, we do not agree to allow any inspection at this time.
>
> *Third*, notwithstanding the foregoing, I would like to try to find an amicable solution. I propose that you withdraw your request for an inspection, pending our production of documents (requested by your subpoena). I reasonably expect that those documents will satisfy you such that you do not need any inspection <u>or</u> that those documents at least might allow you to better narrow and define the scope of your requested inspection, so we can continue our dialogue about a possible inspection. I do not expect it will take us until December 12, 2025 (the due date set in your subpoena) for us to produce those documents, FYI.
>
> If this is not acceptable to you, please let us know and we will take the necessary steps to obtain input from the Court. I look forward to hearing from you.

First Scisciani Decl. ¶ 7, Ex. 3 at 5.

Plaintiff replied that Defendant AHM did not raise any concerns with his requests during the Rule 26(f) conference and that AHM "confirmed that discovery would proceed on a reasonable and proportional basis." First Scisciani Decl. ¶ 7, Ex. 3 at 4. Plaintiff stated that he would not withdraw the Rule 45 subpoena but "remain[ed] fully willing to coordinate a mutually convenient time within normal business hours"; however, if the dealership elected not to permit entry, he would "issue a notice of non-compliance and, if necessary, follow with a motion to compel." First Scisciani Decl. ¶ 7, Ex. 3 at 4. In a follow-up email, Mr. Scisciani informed

PAGE 11 – OPINION AND ORDER

Plaintiff that because he would not withdraw the Rule 45 subpoena, Lithia would be filing for a protective order. First Scisciani Decl. ¶ 7, Ex. 3 at 3.

Plaintiff replied that "my understanding is that a protective order must be entered by the Court before it has any effect on compliance obligations under Rule 45. Unless and until a protective order is granted, I intend to appear for inspection at the date and time specified in the subpoena." First Scisciani Decl. ¶ 7, Ex. 3 at 2. On behalf of Lithia, Mr. Scisciani requested an emergency telephonic hearing with the Court to quash the subpoenas. First Scisciani Decl. ¶ 9. In response to Mr. Scisciani's request, the Court ordered the parties to stay all further requests for discovery/production until after the Rule 16 Conference. ECF No. 16.

After reviewing the Court's order, Mr. Yoshida, on behalf of AHM, reached out to Plaintiff affirming that discovery was stayed until after the Rule 16 conference. First Scisciani Decl. ¶ 10, Ex. 4 at 10. Plaintiff responded to AHM's counsel, asking him to "confirm[] the judges [sic] order only stayed 'further' discovery requests and did not Quash any pending an already properly served subpoenas." First Scisciani Decl. ¶ 10, Ex. 4 at 9. Mr. Yoshida replied that the "Judge has not ruled on the validity of the subpoena one way or the other. That may happen later, if necessary. But the subpoena is not valid/enforceable at this time. It is subject to the stay." First Scisciani Decl. ¶ 10, Ex. 4 at 8.

Thereafter, Plaintiff's emails became increasingly hostile and combative:

Yes, the order is very clear, it's [sic] stays any FURTHER requests for discovery/production but makes no mention of anything already served properly.

I'm also confused why you keep CCing dealership counsel after you [sic] previous statement to them today of: "Since this email string involves discovery as part of this litigation, please do continue to include my office on emails related to the subpoena/proposed property inspection."

And now you are CCin them yourself in contradiction to your previous position?

First Scisciani Decl. ¶ 10, Ex. 4 at 6.

PAGE 12 – OPINION AND ORDER

Mr. Yoshida explained that counsel for Lithia was in copy because the proposed discovery was directed towards Lithia. Mr. Yoshida explained that "you are purportedly seeking discovery from a non-party to prove your case against AHM. Therefore, we want to know, and are entitled to know, what is going on." First Scisciani Decl. ¶ 10, Ex. 4 at 5.

Mr. Scisciani then emailed Plaintiff asking him to confirm that he did not "intend to show up at Honda of Salem for any sort of 'inspection' on Saturday." First Scisciani Decl. ¶ 10, Ex. 4 at 4-5. Mr. Scisciani informed Plaintiff that if he did not so confirm, Mr. Scisciani would "advise the court that you need clarification of the scope of its ruling this afternoon – but I would prefer not to have to do that." First Scisciani Decl. ¶ 10, Ex. 4 at 3-4. Plaintiff replied "If you believe further clarification from the Court is needed regarding the scope of the stay order, you are welcome to request it. I will follow the order as written and whatever guidance the Court provides at the Rule 16 conference." First Scisciani Decl. ¶ 10, Ex. 4 at 3.

Mr. Scisciani then emailed the Court:

> Your Honor, I detest discovery disputes probably as much as the Court does. I have tried mightily to avoid conflict with Plaintiff and I have been forced to spend an extraordinary amount of time today on this matter (over 3.0 hours) and my clients are not even parties to this case. This is one of the busiest times of the year for my clients and I do not wish for them to be disrupted by Mr. Swain; so, **I kindly ask that the Court (a) confirm the inspection and document production sought by Plaintiff's subpoenas to Honda of Salem and its employee Chase Petersen are quashed, (b) instruct Mr. Swain that he is not to show up at my client's dealership expecting to do an inspection on Saturday and (c) take note of my intent to petition this Court for reimbursement of my firm's fees and costs incurred to date associated with Mr. Swain's subpoenas and his more than one dozen e-mails**, as it is unfair for my clients to have to bear those expenses.

December 3, 2026, 7:06 p.m. email to the Court; Lithia's Mot. ¶¶ 12-14.

On December 4, 2026, after receiving multiple emails from Mr. Scisciani, Mr. Yoshida, and Plaintiff, the Court issued another order reiterating that all discovery was stayed until after the Rule 16 Conference, including "all pending discovery requests and subpoenas." ECF No. 17.

PAGE 13 – OPINION AND ORDER

On January 26, 2026, Lithia filed a motion for attorneys' fees and costs amounting to $5,769.00, based on improper subpoenas and improper service of subpoena. On February 25, 2026, Lithia requested leave via email to file a supplemental brief and/or declaration in support of their pending motion for attorneys' fees, based on purported violations of the protective order. Lithia's Motion and supplemental request cited untimely, over-burdensome, and disruptive discovery requests as well as social media posts targeting Lithia dealerships, employees, and counsel in violation of the Court's orders. *See* ECF Nos. 29 and 37. Lithia asked to "recover a revised total of $15,000 in attorneys' fees incurred as a result of Plaintiff's continued improper conduct." Lithia's Supp. Br. 2, ECF No. 37. Lithia also requested a monetary sanction of "$5,000 for intentional disregard of this Court's prior Orders" as well as additional sanctions in the amount of $5,000 for each subsequent violation to "deter Plaintiff from continuing to engage in such harassing and intimidating conduct." Lithia's Supp. Br. 2.

### B. *Improper Subpoenas*

The Court concludes that Rule 45 sanctions are appropriate here based on Plaintiff's conduct in pursuing the subpoenas and the subpoenas themselves which placed an undue burden on non-party Lithia and were inconsistent with the law. Sanctions under Rule 45(d)(1) are appropriate "when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) (citing *Mount Hope Church*, 705 F.3d at 425-28 and *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 814 (9th Cir. 2003)).

Viewed in the most charitable light, much of Plaintiff's behavior could have been chalked up to naïve and overzealous pursuit of his claims. However, Plaintiff sought to enforce subpoenas against a non-party that were stayed pending a Rule 16 conference. Plaintiff's position

PAGE 14 – OPINION AND ORDER

that the Court's order to stay discovery did not include subpoenas Plaintiff had already served is unavailing and disingenuous. Plaintiff was on notice that the subpoenas were not enforceable during the stay; both Defense counsel and counsel for Lithia had informed Plaintiff that was the case. Plaintiff, instead, chose a combative and, frankly, reckless position that having a subpoena somehow insulated him from the Court's orders. Recklessness requires "a gross deviation from what a reasonable person would do." *Reckless, Black's Law Dictionary* (12th ed. 2024). No reasonable person would have assumed they could simply proceed with a subpoena after the Court's order staying further discovery until after the Rule 16 conference.

Additionally, Plaintiff's subpoena requested a four-hour window to inspect the dealership premises on a Saturday with only three days' notice, during one of the non-party's busiest times of the year. Lithia's Mot. ¶¶ 12-14. Although Plaintiff stated he was willing to find a mutually acceptable time for the inspection in his emails, he also repeatedly made clear that he would be on site at the time stated in the subpoena. This forced Lithia to have to seek the Court's intervention to ensure Plaintiff would not attempt to enforce the subpoenas during the stay.

Under normal circumstances, discovery requests are served and responded to in an orderly and timely fashion. To be sure, regular disputes and disagreements pertaining to what is or is not discoverable are expected and managed through the normal course of litigation. To that end, requests for production and site inspections are typically scheduled with advance notice so as to avoid unnecessary expense and inconvenience to the parties subject to the subpoena. Fed. R. Civ. P. 45(d). While the Court is hesitant to award the full amount requested by Lithia, it is clear that Plaintiff's attempts to enforce the subpoenas during the stay was unreasonable and warrant sanctions. The Plaintiff should reimburse Lithia for at least a portion of the hours spent challenging the unreasonable and untimely subpoenas submitted. Specifically, the billable hours

PAGE 15 – OPINION AND ORDER

submitted with the First Scisciani Declaration for time expended on December 3, 2025. First Scisciani Decl. ¶ 15, Ex. 6. Based on the record of hours submitted by Mr. Scisciani, he spent 3.7 hours challenging Plaintiff's request to inspect the non-party dealership's premises, including seeking the Court's intervention. Mr. Scisciani's billing rate is $250 per hour. As Plaintiff was on notice that discovery was stayed, and counsel for non-party notified him of their objections, Lithia can be reimbursed for a portion of those attorneys' fees. The total amount of fees is $925.00 for the 3.7 hours Mr. Scisciani spent on December 3, 2026.

Plaintiff is hereby ordered to reimburse Lithia for attorneys' fees in the amount of $925.00 for the 3.7 hours

### C.  Additional Attorneys' Fees for Social Media Posts

On April 10, 2026, Lithia filed a supplemental brief in support of additional attorneys' fees based on Plaintiff's continued violation of the Court's February 2, 2026, Protective Order. Lithia's Supp. Br. Lithia cited Plaintiff's ongoing failure to comply with the Court's protective order regarding his social media activities. Lithia requested an additional $15,000 in attorneys' fees as well as an order imposing monetary sanctions in the amount of $5,000 for intentional disregard of the Court's order and $5,000 for each subsequent violation. Lithia's Supp. Br. 2.

While Plaintiff's conduct regarding the protective order will be discussed in greater depth below, the Court does not find that monetary sanctions on behalf of Lithia for monitoring Plaintiff's social media posts are appropriate at this time. Moreover, the fees and costs consistent with Lithia's supplemental request are too high and too speculative. However, the Court may reconsider this position if Plaintiff continues to violate the Court's orders. Plaintiff's argument that his failure to follow the Court's orders was based on a "good-faith disagreement on retroactivity" is disingenuous at best. Pl.'s Resp. in Opposition to Lithia's Supp. Br. 5. As further

PAGE 16 – OPINION AND ORDER

discussed below, Plaintiff's actions in violating the Court's order have been demonstrably willful and intentional.

Thus, while the Court denies the fee petition in Lithia's supplemental brief, Plaintiff is cautioned that further infractions may result in further sanctions including monetary sanctions and up to dismissal. Furthermore, the Court does believe that non-monetary sanctions for Plaintiff's violations of the Court's orders are appropriate.

To that end, Plaintiff is hereby prohibited from issuing any subpoena or making any discovery demand to any non-party to this litigation without the Court's express permission. This should protect any non-parties from being forced to respond to unnecessarily broad, expensive, and antagonistic subpoena requests. Plaintiff is further cautioned that this non-monetary sanction does not eliminate the possibility of future sanctions if Plaintiff continues to cause unnecessary expense and undue burden on non-parties.

## II.    AHM's Motion for Sanctions

Defendant's Motion for a Protective Order was granted on January 16, 2026. ECF 26. On February 2, 2026, the Court again admonished Plaintiff for his online conduct, warning him against any effort to reach out directly to Defendant or other represented parties, as such actions violated the protective order. ECF No. 34. On March 9, 2026, after receiving additional complaints from Defendant and Lithia regarding Plaintiff's online posts regarding the litigation, the Court issued a written decision again memorializing the scope of the protective order. ECF No. 36. Plaintiff was again warned that efforts to reach out directly to represented parties, specifically to AHM and dealerships with attorney representation, would be in violation of this Court's orders.

PAGE 17 – OPINION AND ORDER

AHM alleges Plaintiff has failed to comply with the Court's orders and has even "escalated his efforts to compel settlement through his social media posts and dealership harassment immediately following the February 2nd hearing." Def.'s Mot. 3, ECF No. 39. AHM alleges Plaintiff has not removed posts linking and tagging AHM and dealerships. Def.'s Mot. 3-4. AHM argues that Plaintiff's social media posts "track with Plaintiff's 'settlement package' hand delivered to the undersigned counsel's office, which included a $100,000 demand in exchange for Plaintiff's agreement to stop posting on social media 'negative, disparaging, or defamatory' statements about AHM and its affiliates." Def.'s Mot. 6, citing Yoshida Decl. ¶ 5, ECF No. 40. AHM argues that Plaintiff's social media posts, taken in context with Plaintiff's purported settlement agreement, is evidence that Plaintiff is knowingly litigating in bad faith. Def.'s Mot. 6.

Plaintiff, for his part, argues that his posts do not directly reach out to AHM and are, in effect, his version of robust consumer advocacy. According to Plaintiff, he made "at least four documented good-faith efforts to confer" prior to AHM's motion and offered to review any post Defendant considered to be in violation of the Court's order and remove the posts that he "agree[d] crossed a line." Pl.'s Resp. to Def.'s Mot. 2. Plaintiff argues that Defendant declined each of these offers and thus failed to meaningfully confer. Pl.'s Resp. to Mot. 1, ECF No. 43.

Plaintiff is under the mistaken impression that the onus lies with Lithia and/or Defendant to constantly review and point out any posts that they *believe* violate the protective order, after which he can review and decide if he agrees. *See* Pl.'s Supplemental Resp. in Opposition to Lithia's Motion 2, ECF No. 56. Plaintiff took the Court's order to the parties to confer prior to contacting the Court as a sort of cart blanche permission to proceed with the status quo, only requiring his reactive review of any challenged posts. Pl.'s Supplemental Resp. in Opposition to

PAGE 18 – OPINION AND ORDER

Lithia's Motion, Ex. 2. Even when informed by opposing counsel and counsel for Lithia as to his affirmative duty to remove posts that violated the Court's order, Plaintiff chose to maintain an air of ignorance; he essentially took the position that he had no duty to take down offensive posts, absent direction from opposing counsel. But the onus is entirely on Plaintiff to simply *comply with the Court's order*. Considering he has consistently looked for ways to disregard the Court's orders, it is simply not fair to expect Defendant or non-party's counsel to constantly play hall monitor to ensure Plaintiff is behaving himself.

Moreover, it is clear that Plaintiff has not misunderstood the Court's order; he simply opted to circumvent it by reposting older historical posts with the hashtags he wanted to include. *See* Yoshida Decl. Ex 1 at 20, 46. And Plaintiff's posts continue to skirt the lines of this Court's explicit instructions to not attempt to reach out to represented parties—including AHM, the dealerships, and the dealerships employees—through social media. *See* Yoshida Decl. Ex. 1; Second Scisciani Decl. Ex.2, ECF No. 38. Plaintiff's attempts to litigate this case on Facebook in order to force a resolution are wholly inappropriate.

Plaintiff frequently adopts the position that he merely failed to understand the scope of the varying verbal and written warnings the Court has issued. As a result, this Court has been required to expend inordinate amounts of time and energy in review of Plaintiff's voluminous social media posts. Based on these posts, it is clear that Plaintiff is intentionally and willfully violating the Court's orders. For example, Plaintiff has created multiple posts with hashtags that are clearly directed at Honda, such as "#Dear Honda #Please #BuyBack #This #Lemon #Ridgeline" ECF 40, Ex. 1 at 9. And Plaintiff tacitly encourages his followers to tag represented parties on his behalf, meaning he understands the Court's order at least enough to know how to violate the intent of the order.

PAGE 19 – OPINION AND ORDER

In his declaration, Mr. Yoshida cited additional unprofessional and alarming behavior from Plaintiff. According to Mr. Yoshida, Plaintiff has posted screenshots of his communication with Mr. Yoshida to his social media accounts. Yoshida Decl. ¶ 7. Of even greater concern is Mr. Yoshida's allegation that Plaintiff has surreptitiously recorded a conversation between the two without Mr. Yoshida's knowledge or consent. Yoshida Decl. ¶ 8. Oregon law requires that "notice be given before oral conversations may be recorded." *Project Veritas v. Schmidt*, 125 F.4th 929, 938 (9th Cir.) (citing ORS § 165.540(1)(c)) (en banc). Violations of the law will not be tolerated.

Defendant argues that Plaintiff's action should be dismissed under Fed. R. Civ. P. 41(b) and under the Court's inherent power. Def.'s Mot. for Sanctions, ECF No. 39. A district court retains inherent power to control its dockets and punish for violations of their orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). And failure to follow the rules set by the court can result in sanctions including dismissal. Fed. R. Civ. P. 41(b). These rules apply with equal force to pro se litigants. *See* "Representing Yourself," United States District Court, District of Oregon, https://ord.uscourts.gov/index.php/representing-yourself (last visited July 31, 2026); *see also Clark v. Wells Fargo Bank, et al.*, Case No. 6:20-cv-00253-AA, 2020 WL 3038072, at *4 (D. Or. June 5, 2020) (sanctioning plaintiff for violating court order prohibiting him from directly contacting represented defendants in the case, and warning that "failure to comply with the requirements of this order will result in dismissal of this action").

"In determining whether to dismiss a case for failure to comply with a court order the district court must weigh five factors including: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less

PAGE 20 – OPINION AND ORDER

drastic alternatives." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (citation modified). These factors are "not a series of conditions precedent before the judge can do anything," but a "way for a district judge to think about what to do." *Valley Eng'rs Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998).

As to the first factor, "[t]he public's interest in expeditious resolution of litigation always favors dismissal." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). Here, Plaintiff's antics have completely distracted from the merits on this case, making meaningful progress on the merits of his claims nearly impossible.

The second factor also weighs strongly in favor of dismissal. This case has required an enormous amount of the Court's time and energy, for what should have been a straightforward breach of warranty and Lemon Law case. Additionally, Plaintiff's monetization via social media of this lawsuit has created preposterous scenarios wherein the Court has been forced to parse out increasingly specific hashtag-by-hashtag orders, only for Plaintiff to then find new ways to violate whatever direction the Court gives.

The third factor also weighs in favor of dismissal. "In determining whether a defendant has been prejudiced, [the court] examine[s] whether the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987). Here, Defendant has been prejudiced by Plaintiff's actions. Defendant AHM has been forced to expend time, energy, and money responding to unprofessional and often bizarre requests. Defendant has further been unable to focus on the merits of the case because of Plaintiff's actions. Yoshida Decl. ¶ 9.

The fourth factor is neutral in this case. While public policy favors resolution on the merits, in cases "where the plaintiffs themselves prevent their cases from moving forward, the

PAGE 21 – OPINION AND ORDER

public policy favoring resolution on the merits cannot weigh much, if at all, in their favor." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1234 (9th Cir. 2006). Here, the record is clear that Plaintiff has been his own worst enemy in efforts to move the case forward. And Defendant has been forced to respond to Plaintiff's myriad side-quests, rather than focusing on what should be straightforward, uncomplicated breach-of-warranty claims.

Finally, "[t]he district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions." *Malone*, 833 F.2d at 131. Here, the Court cannot say that less drastic sanction would not be appropriate at this stage. Terminating sanctions are an extreme remedy, and while Plaintiff has yet to demonstrate any willingness to engage in the litigation process in good faith, a less harsh sanction may help Plaintiff recognize the gravity of his actions.

To that end, Plaintiff is hereby admonished to behave towards opposing Counsel, as well as counsel for any other represented party, in a civil and respectful manner. This means no threats, personal attacks or attempts to bully anyone involved in this case. Social media posts that are intended to force another party or nonparty into settlement or to take certain actions are inappropriate and disrupt the administration of justice. Plaintiff has complained about delays in this case, but the majority of the delays are a result of his behavior. If Plaintiff fails to comply with any Court order, past, present or future, he may be subject to additional sanctions, including monetary sanctions for attorneys' fees, a gag order, and dismissal of the case.

Those on opposite sides of any action in federal court are expected to litigate their claims robustly, but always respectfully. Plaintiff's behavior towards the parties, non-parties, and this Court has crossed many boundaries into what would be considered unacceptable by any attorney. The Court's leeway today in not dismissing the case is granted solely based on Plaintiff's status

as a pro se litigant. But Plaintiff's position as a pro se litigant will not save him if these same behaviors continue.

## CONCLUSION

In sum, Lithia's Motion for Attorneys' Fees in granted in part. Plaintiff is ordered to reimburse Lithia $925 for the 3.7 hours spent challenging Plaintiff's improper subpoena. Plaintiff is also prohibited from issuing any subpoena to any non-party without first receiving the Court's express permission. Requests for subpoena may be submitted to the Court for review via email.

Defendant's Motion for terminating sanctions is denied. However, if Plaintiff fails to obey the Court's orders or fails to treat other parties with the civility and respect expected in this Court, additional sanctions up to dismissal may be warranted.

DATED this _6th_ day of August, 2026.

/s/Amy E. Potter
AMY E. POTTER
United States Magistrate Judge

PAGE 23 – OPINION AND ORDER