IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| TYLER SWAIN, | Case No. 6:25-cv-02142-AP |
| Plaintiff(s), | **OPINION & ORDER** |
| v. | |
| AMERICAN HONDA MOTOR CO., INC. | |
| Defendant(s). | |

POTTER, United States Magistrate Judge:

Pending before the Court is a discovery dispute, submitted to the Court by Plaintiff via email. Plaintiff argues that seven categories of documents requested from Defendant AHM in connection with his lawsuit remain outstanding. Plaintiff has further requested leave to serve subpoenas for documents on three independent Honda dealerships. Defendant American Honda Motor Co. (AHM) disputes each of Plaintiff's requests.

Unless otherwise limited by Court order, the scope of discovery, as articulated by the Federal Rules of Civil Procedure, is as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

PAGE 1 – OPINION & ORDER

**DISCUSSION**

Plaintiff requested the following categories of documents:  (1) All versions of dealership service records; (2) the signed arbitration agreement between AHM and Plaintiff; (3) all Engineering Request documents relating to the subject vehicle; (4) all Tech Line notes, worksheets, and reports for the subject vehicle; (5) all communications involving DPSM Nelson Aragon concerning the subject vehicle; (6) accurate and complete CRRS report and warranty history printout for subject vehicle; (7) audio recordings of telephone conversations between Plaintiff and AHM.

The Court addresses each of Plaintiff's requests below.

## I.    Independent Dealerships' Service Records

Plaintiff has asserted a need for additional document production from three independent dealerships. Plaintiff first requests:

> All versions of dealership service records – Original customer copies, Warranty copies, and Audit copies – for each visit, with the emphasis on the visits not yet produced at all: Power Honda (Albany, OR) 12/9/25; Price Honda (McMinnville, OR) 12/9/25 and subsequent visits through 12/31/25.

As to relevance, Plaintiff states these records "go[] to the core of both claims. Under Oregon Lemon Law (ORS 646A.400-.418) liability turns on the number of repair attempts for the same noncomformity and cumulative days out of service; under Magnuson-Moss, on the reasonable number of repair opportunities afforded to AHM. These visits are repair attempts that bear direction on both thresholds and on AHM's notice of the continuing defect." Email from Tyler Swain to Court, Plaintiff's List of Outstanding Discovery Materials (Pl.'s Outstanding Discovery List), (June 7, 2026, at 6:18 p.m. PT).

AHM has indicated the documents are not within their custody and control. Def.'s Resp. 4, ECF No. 55. AHM also raises the point that there is no need for multiple records documenting

PAGE 2 – OPINION & ORDER

the same visit and the Court agrees that requesting multiple versions of records documenting the same visit is unnecessarily duplicative and in this case would place a burden on third parties who have . Moreover, Plaintiff has already stated he "has his own copies/receipts from these visits and was physically present for each." However, as this is a warranty claim, warranty versions of the service records for the visits that Plaintiff requested are relevant. Plaintiff asserts he already possesses customer copies of these service records.

Therefore, Plaintiff may serve *limited* document production subpoenas for the following:

- Power Honda (Albany, OR) – Warranty copies of dealership service records for the December 9, 2025, visit

- University Honda (Corvallis, OR) – Warranty copies of dealership service records for the December 9, 2025, visit

- Price Honda (McMinnville, OR) – Warranty copies of dealership service records for visits on December 9, 2025, through the December 31, 2025.

To the extent any of these dealerships have attorneys that are known to Plaintiff, Plaintiff must first contact the attorney for the dealership and inquire if that will accept service of the subpoena via email in lieu of service. If the attorney for the dealership will accept service of the subpoena, Plaintiff may email the subpoena to the attorney. If an attorney is not able to accept service, Plaintiff should serve the subpoenas on the dealership's registered agent. Plaintiff may not serve these subpoenas himself or be present when the subpoenas are served. Any agent used for service may not film, photograph or otherwise record the establishment, employees, facilities, or customers. Any such action will be considered to be in violation of the Court's protective order. *See* ECF Nos. 26 and 36.

**II.     Signed arbitration agreement**

AHM has warranted that no signed arbitration agreement between the parties exists. Plaintiff has withdrawn his request for the signed arbitration agreement. Pl.'s Br. in Resp. 6, ECF No. 57.

**III.    All Engineering Request Documentation**

Plaintiff requests "All 'Engineering Request' documentation relating to the subject vehicle, including any repair performed in relation to such request – specifically including ER25070C:ZZ800." Pl.'s Outstanding Discovery List. Plaintiff argues Engineering Requests are relevant because they "reflect AHM's manufacturer-level analysis of conditions affecting this vehicle. They are relevant to AHM's knowledge of nonconformities, the adequacy of repair efforts, and AHM's good faith in evaluating the buyback – central to both the Lemon Law and Magnuson-Moss claims." Pl.'s Outstanding Discovery List.

Defendant objects that this request is vague and has no bearing on Plaintiff's claims. According to Defendant, ER25070C:Z2800 relates to brake sticking issues with a broad class of vehicles for model years 2023 through 2025.

Based on his Complaint, the request for all engineering documentation is not relevant to his claims. Plaintiff's Complaint states that "Plaintiff presented the vehicle to multiple authorized dealerships on a least (9) separate occasions for recurring electrical issues, including repeated check engine light activations, diagnostic trouble codes (including P0172, P0175, and P0006A), related drivability problems and safety concerns." Complaint (Compl.) ¶ 9, ECF No. 1.

As Plaintiff's Complaint does not refer to brakes, brake sticking, or anything brake related, this request is not relevant to Plaintiff's claim. *See* Fed. R. Evid. 401.

PAGE 4 – OPINION & ORDER

## IV.    Tech Line Notes

Plaintiff requests "All Tech Line notes, worksheets, and reports for the subject vehicle, specifically the contacts not yet produced: Parker Johnstone's Wilsonville Honda and Price Honda. Plaintiff believes these documents are relevant because they "establish AHM's notice of, and participation in, the failed repair attempts – directly relevant to both claims." Pl.'s Outstanding Discovery List 3. Although AHM has already produced "some" Tech Line reports, Plaintiff believes additional reports exist because service notes document further Tech Line contact.

AHM has attested to the fact that they have produced all Tech Line reports that exist within their custody and control. Def.'s Resp. 5-6. The Court has no reason to doubt AHM's assurances on this point. AHM has already produced two Tech Line reports, so it does not seem reasonable to assume that AHM is intentionally holding relevant Tech Line requests back. *See* Pl.'s Br. in Resp. Ex. 4. Moreover, AHM's attorney is aware of his ethical obligation to produce discoverable evidence and has certified as such, as required by the Rules. *See* Fed. R. Civ. P. 11. The Court has no reason to question the credibility of counsel for Defendant. As such, Plaintiff's request is denied.

## V.    Communication with DPSM Nelson Aragon

Plaintiff requests "[a]ll communications involving DPSM Nelson Aragon concerning the subject vehicle, including dates, participants, and substance." Pl.'s Outstanding Discovery List 3. Plaintiff argues that DPSM Aragon "[c]ommunications involving DPSM Aragon bear on AHM's knowledge of the defect, its direction to dealers, and its handling/evaluation of the buyback request – relevant to both claims and to AHM's good faith." Pl.'s Outstanding Discovery List 4.

PAGE 5 – OPINION & ORDER

Defendant argues that it has already produced documents referencing DPSM Aragon's "limited role with pre-litigation complaints and demands" and that any relevant communications or involvement of the DPSM would be reflected in the Tech Line reports and CRRS reports. Def.'s Resp. 6. Defendant further argues that Plaintiff's request is unnecessary and disproportionate to the needs of the case. Defendant argues that Plaintiff's request amounts to a fishing expedition to "investigat[e] some purported conspiracy against him to deprive him of access to independent authorized dealerships." Def.'s Resp. 7.

The Court agrees that this request as written is significantly disproportionate to the needs of the case and would amount to an improper fishing expedition. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1204 (9th Cir. 2021) (noting courts cannot "condone the use of discovery to engage in a fishing expedition.") (quoting *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004)) (citation modified). Oregon Lemon Law holds a manufacturer liable if it is unable to repair or correct a nonconformity with a warranty after a reasonable number of attempts. ORS § 646A.404(1). "It is presumed that a reasonable number of attempts have been undertaken" if "during the two-year period following the date of original delivery of the motor vehicle to a consumer or during the period ending on the date on which the mileage on the motor vehicle reaches 24,000 miles . . . the nonconformity continues to exist" after "three or more" repair attempts, or if the motor vehicle is out of service "for a cumulative total of ... 30 or more calendar days." ORS § 646A.406(1)(a)-(b). As explained with Plaintiff's first request, he may subpoena the three dealerships in question for warranty copies of his vehicle's service records. These records are directly relevant to proving his warranty claim; a broad request for all communication involving a single AHM employee is not.

PAGE 6 – OPINION & ORDER

## VI.    CRRS Reports and Warranty History

Plaintiff requests "accurate and complete CRRS Report and Warranty History printout for the subject vehicle." Pl.'s Outstanding Discovery List 4. According to Plaintiff, these documents are relevant as they are records of Honda's "contacts with Plaintiff and the vehicle's repair history – records AHM uses to evaluate the buyback." Pl.'s Outstanding Discovery List 4. Plaintiff believes that the records he has already received from Honda are inaccurate because "on at least four dates" the reports say that an "AHM representative left Plaintiff a voicemail. Plaintiff's voicemail box was never set up and leaving a voicemail was not possible." Pl.'s Outstanding Discovery List 4. According to Plaintiff, this discrepancy indicates "the produced version is inaccurate or incomplete." Pl.'s Outstanding Discovery List 4. Plaintiff asks AHM to "verify against its systems and produce an accurate, complete version, and confirm whether the produced version is the complete record." Pl.'s Outstanding Discovery List 4.

Defendant argues that Plaintiff has already received "accurate and complete" copies of the records. Def.'s Resp. 7-8. Defendant states that the "limited redactions made by AHM were to remove the names of employees who entered the data into the CRRS reports" as well as references to Plaintiff's lawsuit, which are privileged under the work product doctrine. Def.'s Resp. 7. As to the accuracy of notes regarding leaving a voicemail, Defendant notes that whether that entry is accurate or not "has no bearing whatsoever" on Plaintiff's claims. Def. Resp. 8.

The Court cannot conclude that inaccurate references within the CRRS about leaving a voicemail somehow invalidates the accuracy or completeness of the entire report. Whether a consumer relations representative incorrectly noted that they left a message on Plaintiff's phone has no connection to Plaintiff's claims. Plaintiff has no basis other than gross speculation that

PAGE 7 – OPINION & ORDER

AHM has omitted or produced inaccurate reports and there is nothing to order Defendants to prove.

**VII.    Audio Recordings of Telephone Conversations Between Plaintiff and AHM**

Plaintiff requests the "actual audio recordings (not written summaries) of telephone conversations between Plaintiff and AHM's consumer relations / case management department concerning the subject vehicle, including the September 2, 2025, call logged in AHMs CRRS at 7:01 p.m. Identify the custodian and retention period for these recordings." Pl.'s Outstanding Discovery List 5. Plaintiff asserts relevance on three grounds:

> (1) the recordings are the original source AHM's CRRS notes purport to summarize – and because those notes are demonstrably inaccurate (see Item 6), the audio is the only reliable record of what was actually said; (2) the recordings evidence Plaintiff's good-faith efforts to resolve the matter before suit; and (3) Plaintiff contends the September 2, 2025 call captures case manager "Mario" stating that Plaintiff now qualified for a buyback and could pursue his consumer rights – a statement bearing directly on AHM's liability and on its subsequent knowing denial under both the Lemon Law and Magnuson-Moss claims.

Pl.'s Outstanding Discovery List 5.

Plaintiff believes the call recordings exist, in part, because AHM's "consumer-relations line provides a recorded-line notice ("this call may be recorded); recording such calls is standard industry practice." Pl.'s Outstanding Discovery List 5. According to Plaintiff, the fact that Defendant "acknowledged it possesses materials 'memorializing Plaintiff's communications with AHM's consumer relations department' and deferred them to the Stipulated Protective Order – confirming responsive materials exist." Pl.'s Outstanding Discovery List 5. Plaintiff asks that Defendant produce the audio recordings and call logs "or state under oath that no recordings are retained and identify AHM's call recording retention policy." Pl.'s Outstanding Discovery List 5.

Defendant argues that first that phone calls related to "settlement demands and communications" are not relevant to the Plaintiff's claim. "Whether someone in the consumer

PAGE 8 – OPINION & ORDER

relations department said, within the context of a settlement demand, 'it looks like your vehicle might qualify for a repurchase' or alternatively 'it looks like you have a horrible case,' the fact remains that Plaintiff was not offered a vehicle repurchase." Def.'s Resp. 8. Defendant also notes that AHM "does not have any recordings of any of Plaintiff's phone calls with AHM in its possession, custody, or control." Def.'s Resp. 8.

Here, again, Plaintiff has offered no evidence beyond mere speculation that Defendant has audio recordings of his calls with AHM. The fact that a call "may be recorded" is not evidence that a recording exists. Acknowledging that a record "memorializing Plaintiff's communications with AHM's consumer relations department" exists is also not evidence that an audio recording exists. Plaintiff already knows that AHM has records memorializing his calls with AHM – he has them in the form of CRRS reports. Moreover, Defendant has already stated in its response that no recordings of any of Plaintiff's phone calls with AHM in its possession, custody, or control." Def.'s Resp. 8. That is sufficient. This request is also denied.

## CONCLUSION

Plaintiff may subpoena the three independent dealerships consistent with the parameters outlined in this Order. Plaintiff's other requests for production are denied for the reasons explained above.

IT IS SO ORDERED.

DATED this  11th  day of August, 2026.

  /s/Amy E. Potter  
AMY E. POTTER  
United States Magistrate Judge

PAGE 9 – OPINION & ORDER